9

United States District Court
Southern District of Texas
FILED

FEB 12 2001

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
|    Respondent, § | |
| § | |
| vs. § | C.R. NO. B-99-006 S1 |
| § | |
| ISMAEL CEPEDA Jr. § | |
|    Petitioner. § | |
| (C.A. NO. B-00-52) § | |

## RESPONSE AND MOTION TO DISMISS
## MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, "the government" files this response and motion to dismiss the motion for relief under 28 U.S.C. §2255 filed by Ismael Cepeda Jr., "Cepeda", and in support thereof would respectfully show the court the following:

I.

## JURISDICTION

A. **Procedural history.**

Cepeda was indicted in the United States District Court for the Southern District of Texas on January 5, 1999. In the indictment, Cepeda, along with three others, were charged with conspiracy to possess and with possession with intent to

distribute a controlled substance in violation of 21 U.S.C. §846, 841(a)(1), and 841(b)(1)(B) (DOC 1)[1]. On February 23, 1999, Cepeda was indicted in a superseding indictment which added the count of carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. §924(c) (DOC 51). On March 16, 1999, a second superseding indictment was filed charging Cepeda alone for the identical counts charged in the preceding indictment (DOC 71). On April 1, 1999, Cepeda entered a plea of guilty to the drug possession count (count 2) (DOC 74). The government preserved its right to proceed to trial on count 3. The district judge accepted Cepeda's plea, found him guilty, ordered the preparation of a pre-sentence investigation report (PSR), and set the case for sentencing (DOC 77). On April 6 & 7, 1999, Cepeda's jury trial was held, resulting in a verdict of guilty on the gun count (DOC 95).

The court imposed Cepeda's sentence on June 30, 1999 (DOC 130). With a total offense level of seventeen (17) and a criminal history score that placed him in Category II, the applicable imprisonment range for count two under the Sentencing Guidelines was 27-33 months (PSR 54). Count three carried a consecutive sixty-

---

[1] The first number in the DOC cite relates to the number given the document in the criminal docket sheet. The second number within the DOC cite relates to the page number of the document. PSR is the pre-sentence investigation report. PSR.Add. refers to the addendum to the PSR.

month sentence. The district court remanded Cepeda into the custody of the Bureau of Prisons to serve an eighty-seven month term of confinement that was to be followed by a three-year term of supervised release. The court ordered Cepeda to pay the mandatory assessment of $100.00 (DOC 130).

On June 30, 1999, Cepeda filed notice that he did not wish to appeal his sentence (DOC 131).

On April 5, 2000, Cepeda timely filed his motion for relief under 28 U.S.C. §2255, Civil Action No. B-00-52. (DOC 144).

## B. Basis of jurisdiction

Cepeda invoked this Court's jurisdiction under 28 U.S.C. §2255. In his petition, he complains that his conviction should be set aside on two essential grounds: (1) his attorney rendered constitutionally infirm assistance in not obtaining a dismissal of count three due to a breach of the plea agreement; and (2) his attorney failed to "fully advise him of his right to appeal". This Court is properly vested with jurisdiction under 28 U.S.C. §2255 for the claim of ineffective assistance of counsel.

3

## II.

## FACTS UNDERLYING
## THE CONVICTION AND SENTENCE

### A. Re-arraignment - April 1, 1999.

At his re-arraignment hearing, it was evident that Cepeda's strategy was to plead guilty to the drug possession count and to try the gun possession count to a jury (Re-arraignment p. 2). Cepeda was aware that his plea to the drug possession count would not obligate the government to move for the dismissal of the gun count (Re-arraignment p. 10-11). The standard written plea agreement was entered into between the government and Cepeda at the time of his plea, which, contrary to the clear and reasonable understanding of the parties, specified that the U.S. Attorney would not further criminally prosecute Cepeda for offenses arising from conduct charged in the indictment (DOC 76). However, the government, counsel for Cepeda and the district court informed Cepeda that he would still be facing the gun count (Re-arraignment p. 16). Cepeda acknowledged he was still facing the gun count, despite his plea of guilty to the drug possession count (Re-arraignment p. 17). Similarly, the written plea agreement made no mention of the government's agreement to move for the dismissal of count one. Like the reservation of count three for trial, the government's acknowledgment of its agreement to move for the

4

dismissal of count one was voiced orally by the government at the re-arraignment hearing. Cepeda confirmed his understanding of the plea agreement as voiced by the government and acknowledged his plea was voluntary (Re-arraignment p. 16, 17, 25).

Cepeda then plead guilty to count two. The court ordered the preparation of a PSR (Re-arraignment p. 27).

Cepeda filed no objections to the PSR with probation.

## B. Sentencing: June 30, 1999.

On June 30, 1999, the sentencing hearing was held. Cepeda again confirmed he did not object to the PSR. Following the sentencing hearing, Cepeda filed written notice with the district court of his intention to not appeal (DOC 131).

### IV.

### MOTION TO DISMISS

## A. Cepeda's factual claims and ground for relief.

### 1. Ineffective assistance

Cepeda raises the complaint of ineffective assistance of counsel. Cepeda first argues that his counsel was deficient in failing to "fully advise him of his right to appeal". He then proceeds from the proposition that by pleading guilty to the drug possession charge, the government was bound to move for the dismissal of the gun

5

count. He complains his counsel was ineffective in not enforcing this aspect of his plea agreement. Cepeda's success here depends upon this Court's finding the government in breach of the plea agreement, by prosecuting him on the gun count. Without such finding, he can not establish that his counsel was ineffective.

**B. Cause and prejudice.**

Cepeda must first establish 'cause and prejudice'; cause for not bringing the instant complaint on direct appeal and prejudice amounting to a complete miscarriage of justice. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1977)(holding "plain error" incorrect standard for §2255 and requiring "cause and prejudice" standard). However, a constitutionally deficient explanation of appellate rights by Cepeda's counsel could establish the 'cause & prejudice' elements. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *White v. Johnson*, 180 F.3d 648, 651 (5th Cir. 1999). Factually, such is not the case here.

The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he fails to establish 'ineffective assistance' and therefore fails to establish 'cause and prejudice' for obtaining review on collateral attack. *See, e.g., United States v. Shaid*, 937 F.2d 228, 231-32 & n.7 (5th Cir. 1991). The only "cause" proffered by Cepeda was his claimed ignorance of his appellate rights. As to this claim, the constitution requires counsel to notify a

6

defendant not only of his right to appeal, but also of the procedure and time limits involved. *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999); *Norris v. Wainwright*, 588 F.2d 130, 135 (5th Cir. 1979). Beyond his conclusory assertion of insufficient notice of appeal, Cepeda neither alleges nor cites evidence that he was unaware of his right to appeal, or of the procedure or time limits involved. This is not surprising, as the district court advised him, at both his re-arraignment and sentencing, of his rights regarding appeal. Even if Cepeda was slighted these rights, he must demonstrate that counsel's failure to fully inform him actually caused him to lose his appellate rights.

C. **Legal principles guiding resolution of the ineffective assistance claims**.

Ineffective assistance of counsel claims are reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores-Ortega*, _ U.S. _, 120 S.Ct. 1029, 1034 (2000). To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and

7

the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

Here, Cepeda's "ineffective assistance" claims are premised on the assumption that the government breached the plea agreement. Failure of that premise removes the cloud from his counsel's performance and defeats Cepeda's claims. In determining whether a plea agreement has been breached, the court looks to "what the parties to this plea agreement reasonably understood to be the terms of the agreement". *United States v. Alexander,* 869 F.2d 91, 95 (2nd Cir. 1989).

Second, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 843-44 (1993); *Goodwin v. Johnson,* 132 F.3d 162, 174 (5th Cir. 1998).

To prevail on his claims, Cepeda must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate

8

suggests the government is bound not to further prosecute Cepeda on the gun count (DOC 76, ¶ 12). However, the context of the plea, the explicit admonitions of the district court that, notwithstanding his plea to the drug possession count, he still faced the gun count, and Cepeda's acknowledgment thereof, represents an enforceable 'oral modification' of the plea agreement and belies Cepeda's contention. *United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994).

Cepeda's inferential claim that the gun count would have been dismissed had his attorney invoked paragraph 12 of the written plea agreement is extremely doubtful as it was contrary to law. These assertions merit neither a grant of collateral relief nor an evidentiary hearing.

A Section 2255 Motion requires a hearing unless the files, the motion, and the record of the case conclusively show that no relief is appropriate. 28 U.S.C. § 2255 (foll.), Rule 8(a). *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an evidentiary hearing depends upon an assessment of the record. If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

Although the allegations of a *pro se* complaint are held to a less stringent standard than the formal pleading drafted by lawyers, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief, the cause will be dismissed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). The instant cause does not merit a hearing.

The government prays that the court enter an order denying Cepeda's section 2255 relief under Rule 8(a) of the Rules following 28 U.S.C. §2255.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

By: _____
Mark M. Dowd
Assistant United States Attorney
TX Bar No. 06070500
SD Tex ID No. 9314
600 E. Harrison, # 201
Brownsville, TX 78520
(9563) 548-2554

### CERTIFICATE OF SERVICE

I, Mark M. Dowd, do hereby certify that a copy of the foregoing Respondent's Motion to Dismiss Motion to Vacate Sentence has been mailed on this the 12th day of February, 2001, via certified mail, return receipt requested to Mr. Ismael Cepeda Jr., Reg. No. 82741-079, P.O. Box 9000, Seagoville, TX 75199-9000.

_____
Mark M. Dowd
Assistant United States Attorney

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | **AFFIDAVIT** |
| **COUNTY OF CAMERON** | § | |

   BEFORE ME, the undersigned authority, personally appeared Noe D. Garza, Jr. who, by me duly sworn:

   My name is Noe D. Garza, Jr. My office is located at 854 E. Van Buren St., Brownsville, Texas 78520. My telephone number is 956-544-2911. I am an attorney in good standing with the State Bar of Texas.

   On or about December 23, 1998, I agreed to represent Mr. Ismael Cepeda in a two-count indictment wherein he was charged with the offenses of conspiracy and possession with intent to distribute approximately 671 grams of cocaine and a pending motion to revoke in State Court.

   On January 14, 1999, Mr. Cepeda was arraigned on the indictment first filed against him.

   On March 14, 1999, Mr. Cepeda was arraigned on the first superceding indictment filed against him, which included Count 3, the gun count.

   On April 1, 1999, with the full knowledge and consent of Mr. Cepeda, an agreement was reached with regard to his case. The Government, in exchange for his plea to Count 2 of the indictment, agreed to dismiss Count 1, recommend that Mr. Cepeda be given full credit for acceptance of responsibility, limited its proof to 257.9 grams of cocaine and agreed that he be sentenced at the low end of the sentencing guidelines. The Government, as part of its agreement, never agreed to dismiss Count 3 of the indictment, the gun count.

   Mr. Cepeda's strategy was to plead guilty to Count 2 of the indictment and try Count 3 to the jury. Our defense to Count 3 of the indictment was that he carried the gun for protection and not in connection with the drug trafficking offense. Prior to Mr. Cepeda's arrest on December 16, 1998, an attempt was made on his life December 4, 1998. It was our position during his trial that the gun he carried was to protect himself against the individuals that had attempted to kill him on December 4, 1998. In support of his defense, Brownsville Police Officer's Cameron Ponder and Rey Pineda were subpoenaed as witnesses. These were the officer's who investigated the attempt on Mr. Cepeda's life on December 4, 1998.

   On June 4, 2000, a jury found Mr. Cepeda guilty on Count 3 of the indictment. On June 30, 2000, the Honorable Judge Hilda Tagle sentenced Mr. Cepeda in Count 2 of the indictment to a term of 27 months in prison and in Count 3 to a term of 60 months. By law, Judge Tagle ordered the two sentences to run consecutive to each other. After his sentencing, I visited with Mr. Cepeda at the Cameron County Jail and discussed his

sentence. I explained to him that he had the right to appeal the verdict of the jury and the sentence imposed by the Court. I advised him that if he wished to file an appeal that he had 10 days from the date the sentence was imposed to file his notice of appeal with the District Clerk.

Mr. Cepeda was fully aware that the Government never told him or me that Count 3 would be dismissed, if he pled guilty to Count 2. Mr. Cepeda was further fully advised of his rights of appeal and decided not to appeal and accordingly waived his right to appeal by executing waiver.

SIGNED on this the 12th day of February, 2001.

_____
Noe D. Garza, Jr.

SWORN AND SUBSCRIBED before me on this 12th day February, 2001.

GREGORIO PADILLA
NOTARY PUBLIC
State of Texas
Comm. Exp. 06-12-2004

_____
Notary Public, State of Texas